BAKER v. THE CHICAGO, BURLINGTON & QUINCY R'Y CO.

1. **Railroads:** STOCK KILLED ON TRACK: WANT OF FENCE: NEGLIGENCE IN RUNNING TRAIN: SINGLE DAMAGES. In an action for the value of cattle killed on defendant's track by a passing train, the first count of the petition contained such averments as would, if proved, have entitled plaintiff to double damages, on the ground that the cattle got upon the track by reason of the want of a fence; and much time was spent on the trial upon the issue as to the sufficiency of the fence. But plaintiff claimed and recovered only single damages. *Held* that, regardless of the issue as to the want of a fence, such recovery was authorized under another count of the petition, which the jury specially found to be true, and which was sustained by sufficient evidence, to the effect that defendant's employes in charge of the train might, by the use of ordinary care, have avoided colliding with the cattle, but that they ran the train negligently, and made no effort to avoid the accident and injury.

2. **Evidence:** NO PREJUDICE—NO REVERSAL. No reversal can be had for alleged error in allowing a question to be asked a witness, when the answer is favorable to the appellant.

3. **Negligence:** HOW PROVED: INSTRUCTION. In an action against a railroad company for negligently running upon and killing cattle, the court instructed that "negligence, like any other fact, may be established by showing facts and circumstances *bearing, more or less directly, upon the fact of negligence.*" *Held* that the instruction defined the character of the evidence, rather than its weight and effect, and that, taken in connection with other instructions given, it was not erroneous

*Appeal from Decatur District Court*—HON. JOHN W. HARVEY, Judge.

TUESDAY, DECEMBER 13.

THIS is an action at law to recover damages for killing and injuring certain cattle, the property of the plaintiff, by being

struck and run over by an engine on the defendant's rail-road. There was a trial by jury, and a verdict and judgment for plaintiff. Defendant appeals.

*T. M. Stuart*, for appellant.

*Bullock & Hoffman* and *Young & Parrish*, for appellee.

ROTHROCK, J.—I. The plaintiff alleged in his petition that an engine of the defendant ran upon and killed eight of his steers, and injured another, and that he was thereby damaged in the sum of $495. It is also averred that plaintiff served on the defendant a notice and affidavit as required by law, and that more than 30 days had elapsed after said service, and no payment or settlement had been made for the damages sustained. Judgment was demanded for $495, and no more. This appears to have been the plaintiff's estimate of the actual damages. His estimate given as a witness on the trial amounts to that sum, and there was no evidence in the case showing the actual damages to be less than $385. It will thus be seen that the plaintiff neither claimed nor recovered double the actual damages sustained. The verdict was for $495, and this verdict can be sustained as being for actual damages only. It is true, the cattle were killed and injured by passing upon the railroad track through an open gate at a place where the defendant had the right to fence its road; but there was a second count in the petition, in which the plaintiff claimed a right of recovery because the employes of the defendant who were in charge of the engine ran the same in such a reckless and careless manner, and no attempt was made to check the engine, and that the injury could have been avoided by the exercise of the most ordinary care.

Now, while it is true, much of the time during the trial was taken up with a controversy as to whether the defendant was liable because of the gate being left open, and whether the gate was so decayed and rotten and broken that it would

*Marginal note: 1. RAILROADS: stock killed on track: want of fence: negligence in running train: single damages.*

have been no barrier against live stock if an attempt had been made to close it, yet the plaintiff was entitled to recover by proving the alleged negligence in the operation of the engine, no matter how securely the road might have been fenced.    In other words, if the employes in charge of the engine did not properly manage the same, and, by running it with ordinary care, could have avoided injury to the cattle after they were or could have been seen from the engine, the defendant is liable for the actual damages, without regard to the condition of fences or gates, and the jury evidently founded their verdict upon this ground, as shown by the following special interrogatories submitted to them, and the answers thereto:   "(6)   Does not the preponderance of the evidence introduced in this case show that, at the time said cattle were struck and injured by the engine, said engine was being run in a careful and prudent manner, and at a moderate rate of speed?   *Answer.*   No.   (7)   Does not the preponderance of the evidence in this case show that defendant's employes in charge of such engine were using reasonable care and diligence in the operation or running of said engine at the time it struck and injured plaintiff's cattle?   *A.*   No.   (8)   Does not the preponderance of the evidence show that defendant's employes, in charge of said engine when it struck plaintiff's cattle, did everything that reasonably could be done to avoid such injury?   *A.*   No."   If the plaintiff had claimed double damages in his petition, or if the verdict had actually been for double damages, there might be room for controversy as to whether the jury may not also have found that the defendant was liable because the gate was open.   But as the jury in answering the above special interrogatories found, in effect, that the defendant was liable for negligently operating the engine, these special findings are decisive of the rights of the parties, and it was the duty of the jury to return a general verdict for the plaintiff, without regard to the other questions in the case.

The important question is whether the answers to the

special interrogatories are supported by the evidence. Counsel for the defendant insists that they are absolutely without any evidence to sustain them. In determining this question, it is not practicable to set out the evidence of the witnesses. There are always so many facts and circumstances adduced, which properly enter into the question as to whether an act is the result or offspring of negligence, that it is impracticable to set them out in an opinion. The cattle were killed in the night at from 10 to 11 o'clock. An important question in the case is how far they could have been seen by the persons on the engine whose duty it was to be on the lookout for obstructions on the track. The persons on the engine testified that the night was so cloudy and foggy that an object on the track could not have been seen except at a very short distance. On the other hand, other witnesses testified that it was a bright, clear, moonlight night. It may be said that, as the men in charge of the engine knew that the road was fenced, there was less necessity that they should be on the lookout for obstructions. But there had been a heavy rain and wind storm during the day preceding, which was of such severity as to injure the fences in places, and blow open gates on the line. There was therefore a necessity for more than ordinary precaution in running the engine. The plaintiff and one other witness testified that, from the sound and roar of the engine, they thought it was run at very great speed. The men on the engine testified that it was running at the rate of from 12 to 15 miles an hour. Eight of the cattle were killed at once, or so injured that they were worthless, and another was injured to a considerable extent. They were left lying along the road for a considerable distance. There is quite a conflict in the evidence as to the position of the injured cattle as they were left upon the track. Owing to the heavy rain, the ground was soft, and the tracks of the cattle were visible. We cannot set out the evidence fully as to what was observed by the witnesses who examined the track and marks

upon the ground after the injury. This evidence, no doubt, had an important bearing upon the findings of the jury, and, as one rises from a careful perusal of it, he cannot but say that a man in the exercise of fair judgment, and without passion or prejudice, might well find from the evidence that the men in charge of the engine should, in the exercise of ordinary care, have avoided the injury. It is true, the court instructed the jury, at the instance of the defendant, that proof that a train or engine was run at any rate of speed does not constitute in itself negligence. But this was not a direction to the jury that an unusual and reckless rate of speed was not a proper fact for their consideration in connection with the other facts in determining the question of negligence.

As we have said, the jury were fully warranted in finding that the night was bright and clear, with the moon shining, and, taking into consideration the manner in which the cattle were left upon the road, and the distances apart, and the places where they must have been struck, the finding that the train must have been running at an immoderate speed is supported by sufficient evidence; and we say this in view of the fact that the injury occurred on Sunday night after a severe storm, of which the train-men had full knowledge, and in view of the proven fact that the track was not patrolled on Sundays unless in case of apparent necessity therefor.

II. It remains to be determined whether the court erred in any of its rulings upon the branch of the case upon which 2. EVIDENCE: the verdict was founded. The injury occurred no prejudice— no reversal. near Leon, Decatur county. The telegraph operator at that point was called as a witness for the defendant, and stated that, when the engine reached that station, the engineer told him that he had better call up the section foreman; " that he had knocked over three or four cattle up there." Thereupon the plaintiff, upon cross-examination, asked the witness for all the conversation with the engineer, and whether the engineer did not say that " he just threw

open the throttle-valve and let the engine run into them."
This was objected to by the defendant. It is possible that
the plaintiff had the right to prove the whole conversation;
but whether this is so or not, the witness answered that the
engineer did not so state. The defendant was therefore not
prejudiced by the cross-examination.

III. The defendant complains because the court refused
to give to the jury certain instructions upon the doctrine of
contributory negligence. We do not think that the facts of
the case require the court to submit that question to the jury.

IV. Objection is made to the ninth instruction given by
the court to the jury. It is as follows: " (9) And on this
branch of the case you are further instructed
3. NEGLI-
GENCE: how     that the burden of showing negligence on the
proved: in-
struction.     part of defendant's employes in charge of said
engine is on the plaintiff. Yet negligence, like any other
fact, may be established by showing facts and circumstances
*bearing, more or less directly, upon the fact of negligence.*"
The words in italics are said to authorize the jury to find
negligence by a less degree of proof than is required by law.
Perhaps the instruction is not so clear as it might have been
made; but it is one of several instructions upon that ques-
tion, and, when considered with the others of which it
appears to be a part, we discover no error in it. Taken
alone, it merely advises the jury that the facts and circum-
stances which go to establish negligence may be such as bear
more or less directly upon the issue of negligence. It
defines the character of the evidence, rather than its weight
or effect.                                            AFFIRMED.